

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JENNIFER ROBERTS, individually and on behalf of her minor children, T.F., E.F., and A.F.,<br><br>Plaintiff,<br><br>vs.<br><br>DONALD BELL; LAKE COUNTY; and DOES 1–10,<br><br>Defendants. | CV 17–65–M–DLC–JCL<br><br>ORDER |

United States Magistrate Judge Jeremiah C. Lynch entered Findings and Recommendations in this case on July 25, 2017, recommending Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 4) be granted and the case be dismissed. (Doc. 10 at 10–11.) Plaintiff Jennifer Roberts ("Roberts") timely filed an objection and is therefore entitled to de novo review of the specified findings and recommendations to which she objects. 28 U.S.C. § 636(b)(1). The portions of the findings and recommendations not specifically objected to will be reviewed for clear error. 28 U.S.C. § 636(b)(1)(A); *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir.

-1-

1981). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

For the reasons stated below, the Court declines to adopt Judge Lynch's Findings and Recommendations.

## BACKGROUND

On February 27, 2017, Roberts' mother, Cheryl Ann Brown ("Brown"), died in a tragic automobile accident as a result of a collision between the vehicle she was driving and a school bus on a highway in Lake County, Montana. Lake County Sheriff Donald Bell ("Sheriff Bell") responded to the scene of the accident and took several photographs, which he then posted on the Lake County Sheriff's Office Facebook page. Local media outlets reposted the photographs on their media sites, and the images were picked up by various entities and reposted around the internet.

As Roberts describes them, the photographs depict the body of her deceased mother. Roberts alleges she and her minor child, A.F., suffered severe emotional distress after seeing the images on Facebook. Roberts further claims that internet users have forwarded the photographs to her and her minor children, causing them repeated severe emotional distress.

Roberts commenced this action in May 2017, alleging claims under 42 U.S.C. § 1983 against both Lake County and Sheriff Bell for allegedly depriving her of her substantive due process rights under the Fourteenth Amendment. She also alleges state law claims against Defendants for negligence and violations of her rights under the Montana Constitution. Defendants filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## DISCUSSION

### I. Roberts' § 1983 claim against Sheriff Bell

Roberts alleges that Sheriff Bell is liable in his individual capacity pursuant to 42 U.S.C. § 1983 because he violated her substantive due process rights under the Fourteenth Amendment by posting photographs of her deceased mother's body on the internet. (Doc. 1 at 5–7.)

In order to prevail on her individual capacity claim against Sheriff Bell under § 1983, Roberts must show "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When qualified immunity is at issue, a plaintiff must also show that the constitutional right was clearly established at the time of the alleged violation. *See, e.g., LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157

(9th Cir. 2000).

Defendants do not dispute that Bell was acting under color of state law when the conduct complained of took place. And, for purposes of their Motion, Defendants assume that Roberts has a well established constitutionally protected right in images of her deceased parent. Defendants make this assumption based upon *Marsh v. County of San Diego*, 680 F.3d 1148, 1153–55 (9th Cir. 2012). In *Marsh*, the Ninth Circuit held that a parent's right of privacy in the autopsy images of their child is protected by the substantive due process guarantees of the Fourteenth Amendment. *Id.*

While substantive due process protects individuals from arbitrary deprivations of their constitutional rights through the executive abuse of power, only "the most egregious official conduct can be said to be arbitrary in a constitutional sense." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1988)). In order to violate substantive due process, the alleged official conduct must "'shock the conscience' and 'offend the community's sense of fair play and decency.'" *Marsh*, 680 F.3d at 1154 (quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952)). Whether conduct shocks the conscience is an objective test to be applied to the circumstances of the particular case. *See Lewis*, 523 U.S. at 857 (Kennedy, J.,

concurring).

Judge Lynch determined that the publicized photographs, particularly one which Roberts' claims depicts her mother's body "partially covered by a blue blanket or tarp, with her bloody arm dripping blood onto the floor of the vehicle and the ground," are the focal point of this litigation. (Doc. 10 at 8 (quoting Doc. 8 at 6).) Although the parties describe these photographs differently, they do not dispute their authenticity. (*Id.* at 7.) Judge Lynch concluded that the question of whether or not the publication of the photographs violated Roberts' substantive due process rights turned on whether or not Bell's conduct "shocks the conscience." (*Id.* at 6.) Judge Lynch then interpreted County Defendants' Motion to Dismiss as, in effect, a request for the Court "to review the photographs and determine as a matter of law whether they shock the conscience." (*Id.* at 7.) Judge Lynch relied on *Cotta v. County of Kings*, 79 F. Supp. 3d 1148, 1178–79 (E.D. Cal. 2015), for the proposition that "whether conduct shocks the conscience can be an issue of law that the Court may decide based on undisputed facts." Judge Lynch then considered the photographs to decide whether publicizing them shocked the conscience as a matter of law. (Doc. 10 at 7.) Judge Lynch focused on the photograph described above and concluded that it did not "primarily depict the death image" of Brown and was "not so graphic" as to objectively shock the

conscience. (*Id.* at 8.) Since Bell's alleged conduct did not objectively shock the conscience, Judge Lynch found as a matter of law that the conduct at issue did "not rise to the level of a substantive due process violation." (*Id.*)

Roberts' objected to Judge Lynch's finding that the picture alleged to show her mother's arm does not objectively shock the conscience as a matter of law. (Doc. 11 at 2.) Noting that the Court is to take all allegations in her complaint as true and construe all inferences in her favor when deciding a motion to dismiss, Roberts offers a declaration detailing how the picture shocked her conscience, the conscience of her children, and "offended the community's sense of decency." (*Id.* at 4.) Roberts points out that while the question of whether conduct shocks the conscience *may* be an issue of law for the Court to decide, the "corollary is also true" and the question may be an issue of fact left for the jury to decide. (*Id.*) At bottom, Roberts' objection questions whether Judge Lynch's determination was indeed "objective" and posits that the issue is better left for the jury to decide in light of Roberts' proffered evidence which tends to show that the publication of the picture shocks the conscience and offends the community's sense of decency.

Defendants counter that Roberts' objection is "simply a rehash of arguments raised in the briefing" and an attempt at a "re-do" through the submission of additional evidence. (Doc. 14 at 6.) Defendants contend that Roberts' evidence is

"not proper evidence to submit for the Court's consideration at this juncture." (*Id.*) Defendants also point out that Roberts failed to include facts or law which contradict Judge Lynch's Findings and Recommendations. (*Id.* at 7.)

As an initial matter, the Court finds that the submission of Roberts' declaration and her attorney's declaration is acceptable at this juncture. 28 U.S.C. § 636(b)(1)(C) provides the Court with the authority to "receive further evidence" when deciding whether to adopt, modify, or reject a magistrate judge's findings and recommendations. Here, Roberts provided a declaration in which she explains how the publication of the photograph which shows her mother's body covered by a tarp with her bloodied arm hanging out shocked the conscience of herself and her minor children. (Doc. 11-1 at 2–3.) She explains that her children "continue to have nightmare about the pictures" and "have needed counseling to deal with the horror and nightmares brought on by the online picture of my mother's body." (*Id.* at 3.) Roberts' attorney also provided a news article which appears on the Daily Inter Lake's website showing the disputed picture as well as comments from viewers. (Doc. 12-1 at 2–3.) The viewers' comments question the discretion of the Daily Inter Lake in posting the photograph, draw attention to Brown's body being displayed in the photograph, call for removal of the photograph to spare loved ones the disturbing experience of seeing Brown as depicted, and offer

condolences to Brown's family and friends. (*Id.* at 3.)

The Court acknowledges that a judge has discretion pursuant to both United States Supreme Court and Ninth Circuit precedent to determine the question of whether conduct shocks the conscience as a matter of law, which is what Judge Lynch did in this case. However, legal precedent provides that this issue could also have been left to the jury and, after reviewing the evidence detailed above, the Court is persuaded that the question of whether or not the publication of the photograph shocks the conscience is a decision better left for the jury to decide.

Substantive due process claims are "routinely reserved without question for the court." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 753 (1999) (Souter, J., concurring in part and dissenting in part). This is because "it would be far removed from usual practice to charge a jury with the duty to assess the constitutional legitimacy of the government's objective or the constitutional adequacy of its relationship to the government's chosen means." *Id.* at 754.

In this case, however, the jury would not be tasked with such a quandary. When determining whether conduct shocks the conscience, the first question is "whether the circumstances are such that actual deliberation by the officer is practical." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting

condolences to Brown's family and friends. (*Id.* at 3.)

The Court acknowledges that a judge has discretion pursuant to both United States Supreme Court and Ninth Circuit precedent to determine the question of whether conduct shocks the conscience as a matter of law, which is what Judge Lynch did in this case. However, legal precedent provides that this issue could also have been left to the jury and, after reviewing the evidence detailed above, the Court is persuaded that the question of whether or not the publication of the photograph shocks the conscience is a decision better left for the jury to decide.

Substantive due process claims are "routinely reserved without question for the court." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 753 (1999) (Souter, J., concurring in part and dissenting in part). This is because "it would be far removed from usual practice to charge a jury with the duty to assess the constitutional legitimacy of the government's objective or the constitutional adequacy of its relationship to the government's chosen means." *Id.* at 754.

In this case, however, the jury would not be tasked with such a quandary. When determining whether conduct shocks the conscience, the first question is "whether the circumstances are such that actual deliberation by the officer is practical." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998)). "Where actual deliberation is practical, then an officer's 'deliberate indifference' may suffice to shock the conscience." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Conversely, when a law enforcement officer "makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." *Id.* "Deliberate indifference" is a lower standard than "purpose to harm." *A.D.*, 712 F.3d at 453. Here, the Court is satisfied that the decision to publicize the photographs was not a "snap judgment" made in "an escalating situation." Accordingly, the "deliberate indifference" standard applies and the only question is whether the conduct shocks the conscience. The Court is convinced that this question is not too "far removed from usual practice" and is appropriate, if not best suited, for consideration by a jury.

"Courts are split on the issue of whether determining if conduct 'shocks the conscience' is an issue of law for the court to decide or if it is an issue reserved for the jury." *Cotta*, 79 F. Supp. 3d at 1178; *compare Terrell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005) (en banc) ("Because the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, not a question of fact for the jury."), *with Patrick v. Great Valley School*

*Dist.*, 296 Fed. App'x 258, 262 (3d Cir. 2008) (stating that evidence was sufficient to allow a rational jury to find that conduct shocked the conscience). The Ninth Circuit has not expressly held that the question of whether conduct shocks the conscience must be decided by the court as a matter of law. While the Ninth Circuit has not expressly designated the question a matter of law, the Court has made the determination that questioned conduct shocks the conscience. *See, e.g., Marsh*, 680 F.3d at 1155 ("This intrusion into the grief of a mother over her dead son . . . 'shocks the conscience' and therefore violates Marsh's substantive due process right."); *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1080 (9th Cir. 2011) ("The officers' conduct does not 'shock the conscience.'"); *Crowe v. County of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010) ("One need only read the transcripts of the boys' interrogations . . . to understand how thoroughly the defendants' conduct in this case 'shocks the conscience.'"). On the other hand, the Court's decision in *A.D. v. California Highway Patrol*, 712 F.3d 446 (9th Cir. 2013), suggests that a jury may properly decide the issue.

In *A.D.*, the plaintiffs brought a § 1983 claim against the law enforcement officer who shot and killed their mother on the grounds that his conduct violated their Fourteenth Amendment due process rights. 712 F.3d at 450–52. The law enforcement officer moved for summary judgment which the district court denied

based upon the court's determination that "a reasonable jury could find that [the law enforcement officer] used deadly force with a purpose to harm [plaintiffs' mother] unrelated to a legitimate law enforcement objective." *Id.* at 451. The district court also found that the alleged conduct "violated the clearly established law set out in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). *A.D.*, 712 F.3d at 451. At trial, the district court denied defendant's motion for judgment as a matter of law ("JMOL") and renewed JMOL motion. *Id.* Defendant appealed the district court's denial of his renewed JMOL.

The Ninth Circuit affirmed the denial on the grounds that "on the facts as the jury found them, [the law enforcement officer] violated clearly established law." *Id.* at 460. The Court had previously stated that the jury was properly instructed that it should find defendant violated plaintiffs' rights if he "acted in a manner which shocks the conscience" as defined as "acting with a purpose to cause [plaintiffs' mother's] death unrelated to the legitimate law enforcement purposes of taking her into custody, self-defense, or the defense of others." *Id.* at 456 n. 5; *see also A.D. v. Markgraf*, 636 F.3d 555, 560 (9th Cir. 2011), *opinion withdrawn by* 676 F.3d 868 (9th Cir. 2012), *and superseded sub nom. by* 712 F.3d 446 (9th Cir. 2013). The Court expressed its satisfaction that the law was clearly established and there was sufficient evidence to support the jury's verdict at trial.

-11-

*A.D.*, 712 F.3d at 458.

Similarly, in this case the law is clearly established. In fact, for purposes of their Motion, Defendants assume that *Marsh* clearly established a parent's right of privacy in the death images of a child. (doc. 10 at 4–5.) The Ninth Circuit in *Marsh* found a "well-established cultural tradition acknowledging a family's control over the body and death images of the deceased" which the Court concluded is "protected by substantive due process." 680 F.3d at 1154 (quoting *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 168 (2004)). Therefore, at trial, the question would not be whether the right was clearly established but, rather, whether the publication of the image shocks the conscience.

In conclusion, the Court acknowledges that Judge Lynch's determination that Sheriff Bell's publication of the photograph does not shock the conscience was consistent with case law allowing the question to be answered as a matter of law. Notwithstanding the fact that some courts have addressed this issue as a matter of law, others have left this issue to the jury to determine. Under the circumstances of this case the Court is convinced that the question is better answered by the jury than by the Court.

II. **Roberts' § 1983 claim against Lake County**

Roberts alleges that Lake County is liable because Sheriff Bell, as the elected Sheriff of Lake County, is the policymaker for the Lake County Sheriff's Office and established the practices which caused the violation of her constitutional rights. (*Id.* at 7–8.)

After determining that Sheriff Bell's conduct was not constitutionally violative, Judge Lynch turned to Roberts' § 1983 claim against Lake County which requires a "policy, practice, or custom" that caused a "violation of constitutional rights." (Doc. 10 at 9 (quoting *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).) Without an underlying constitutional violation, Judge Lynch concluded that there could not be municipal liability under § 1983. (*Id.*) Because the Court is convinced that a jury should be entrusted with the decision of whether a constitutional violation occurred, the Court declines to adopt Judge Lynch's finding and recommendation that Roberts failed to state a claim against Lake County.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo*, 521 F.3d at 1104.

A county may only be held liable under 42 U.S.C. § 1983 if the allegedly unconstitutional acts were "undertaken pursuant to official policy or custom." *Hopper v. City of Pasco*, 241 F.3d 1067, 1082 (9th Cir. 2001) (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690–91 (1978)). There a three ways for a plaintiff to meet the policy or custom requirement which include establishing "that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official government policy." *Id.* at 1083 (quoting *Gillette v. Delmore*, 979 F.3d 1342, 1346–47) (internal citations and quotations marks omitted).

Defendants' Motion to Dismiss, as it relates to Roberts' complaint against

Lake County, rests upon Defendants' assertion that Roberts "has not alleged facts which demonstrate that Bell's actions violated her constitutional rights." (Doc. 5 at 14.) Based upon the assumption that this is the case, Defendants contend that without an underlying constitutional violation on the part of Sheriff Bell, Roberts cannot establish that there is an unconstitutional municipal policy. (*Id.*)

Roberts responds that she has established a constitutional violation which shows that Lake County has failed "to train officers and implement and follow a social media policy that complies with Constitutional law." (Doc. 8 at 7.) Roberts argues that this "violates the Constitution and gives rise to municipal liability." (Doc. 8 at 7.) Moreover, Roberts alleges that Sheriff Bell "committed the unconstitutional acts and that he is an official with final policy-making authority" which implicates liability for Lake County. (*Id.*)

The Court is satisfied that Roberts' complaint states facts which support her cognizable legal theory. As has already been discussed, Roberts' alleges that Sheriff Bell violated her constitutional rights by posting photographs depicting the death of her mother. Roberts' complaint also alleges that Sheriff Bell is "an official with final policy-making authority" which establish his actions as "official government policies." (Doc. 1 at 8.) Accordingly, Defendants' Motion to Dismiss as it relates to Roberts' § 1983 claim against Lake County will be denied.

### III. Roberts' state law claims

Finally, assuming that Roberts' § 1983 claims would be dismissed, Judge Lynch recommended the Court decline to exercise supplemental jurisdiction over Roberts' remaining state law claims and "dismiss this action in its entirety." (Doc. 10 at 10.) Thus, Judge Lynch did not address the merits of Roberts' state law claims.

The Court retains jurisdiction over Roberts' two state law claims alleging a violation of the Montana Constitution (Count 3), and Negligence (Count 4). Although Defendants have moved to dismiss these two counts, and this Motion has been fully briefed, the Court declines to rule on Counts 3 and 4 at this time without the benefit of a factual record developed through discovery. The next step in this case is for Defendants to file their answers to the Complaint. The Court will then issue its usual order setting a Rule 16 scheduling conference, at which time deadlines and a trial setting will be set, including a motions deadline. The Defendants can then renew their motion directed to the state law claims which the Court believes is best considered following discovery and in the form of a motion for summary judgment.

Accordingly, IT IS ORDERED that Judge Lynch's Findings and Recommendations (Doc. 10) are REJECTED. County Defendants' Motion to

Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 4) is DENIED as provided above.

DATED this 4th day of January, 2018.

Dana L. Christensen, Chief Judge
United States District Court